STATE OF MINNESOTA, *ex rel.* Moses E. Clapp, Attorney General, *vs.* SIOUX CITY & NORTHERN RAILROAD COMPANY.

### February 17, 1890.

**Corporations—Fees for Filing Articles—Iowa Railway Companies.—** *Held,* that the provisions of Laws 1889, *c.* 225, apply to Iowa railway companies who accept the provisions of Laws 1877, *c.* 14, and that such companies are required, as a condition precedent to filing their articles of association with the secretary of state, to pay into the state treasury the fees prescribed by the act of 1889.

*Quo Warranto.* Respondent demurs to the information.

*Moses E. Clapp,* Attorney General, for the State.

*Daniel Rohrer,* for respondent.

MITCHELL, J. Chapter 14, Laws 1877, provided that "any railroad organized, or that may be hereafter organized, under the laws of the state of Iowa, is hereby authorized to extend and build its road into the state of Minnesota; and such railroad company shall have and possess all the powers, franchises, and privileges, and be subject to the same liabilities, of railroad companies organized and incorporated under the general laws of this state: *provided* such non-resident company shall first file a true copy of its articles of incorporation with the secretary of this state, and *shall comply with the laws of Minnesota as to filing and recording its articles of incorporation.*" On March 28, 1889, another act was passed (Laws 1889, *c.* 235) which provided, generally, that any railroad company organized

under the laws of other states is authorized, *upon being incorporated in this state as hereinafter provided,* to build and extend its road into this state, and shall have and possess all the powers and franchises, and be subject to the same liabilities, as railroad corporations organized and incorporated under the general laws of this state: *provided* such railway company shall first file in the office of the secretary of this state a copy of its articles of organization or incorporation, and shall comply with the law of this state as to filing and recording its articles of incorporation; that upon and after the filing of its said articles, which shall be deemed an acceptance of the benefits of the act, the said corporation *"is hereby declared to be a legal domestic corporation."* A third act was passed April 24, 1889, (Laws 1889, *c.* 225,) which took effect May 1st of the same year, providing "that no corporation or association  *  *  *  *shall hereafter be created or organized under the laws of this state,* unless the persons named as corporators therein shall, at or before the filing of the articles of association or incorporation, pay into the state treasury the sum of fifty dollars for the first $50,000, or fraction thereof, of the capital stock of such corporation or association, and the further sum of five dollars for every additional $10,000, or fraction thereof, of its capital stock." The respondent was organized as a corporation under the laws of Iowa, October 3, 1887, with a capital stock of $10,000,000, for the purpose of constructing and operating a railroad from Sioux City, in that state, to the south boundary of Minnesota, and thence through this state to Duluth. In the summer of 1889, it constructed and is now operating, in this state, a portion of its line of road, and assumes to possess, and is exercising in this state, all the powers and franchises of domestic railway corporations, claiming the right to do so under the act of 1877. Its articles of association have never been filed with the secretary of this state, but subsequently to May 1, 1889, it tendered to him a copy of the same, and requested him to receive and file them; but he declined to do so unless the company would first pay to the state treasurer $5,025, the percentage on its capital stock required by Laws 1889, *c.* 225. This the company declined to do, claiming that the provisions of this act did not apply to it, as not being a corporation

"created and organized under the laws of this state," but one created and organized under the laws of Iowa; and the correctness of this contention is the only question raised by the demurrer to the information.

The state contends that the act of March 28, 1889, is the law applicable to the case; its position, as we infer, being that as this act is general in its terms, and covers the whole subject, it repeals by implication the act of 1877. If this were so, it would be decisive of the case adversely to the respondent company, for it is very clear that the act of March, 1889, provides for not a mere statutory license to a foreign railroad corporation to transact business in this state, but a reincorporation, and placing it upon the footing of a domestic corporation within the state. Hence any company accepting its provisions, although also a corporation of another state, would be *here* a corporation "created and organized under the laws of this state." But we shall assume, without deciding, that the act of 1877 is still in force, and also assume, without deciding, that an Iowa railway company, by accepting the benefits of that act, does not become, strictly speaking, a domestic corporation, but merely obtains a statutory license to construct and operate railways in this state, under a grant of all the powers and franchises possessed by domestic railway companies under the laws of this state. This, of course, is the position most favorable to the contention of the respondent. But, even with these concessions, we think that the case comes clearly within the spirit, and also within the language, of Laws 1889, *c.* 225, giving to the expression, "created and organized under the laws of this state," a liberal, but allowable, construction, in accordance with the sense in which it is apparently used in this connection.

The franchises and privileges which a corporation may exercise within the jurisdiction of any state must in all cases be derived from the laws of that particular state; and this is equally true whether the corporation be admitted to act in the state by a statutory license, or by a grant of a complete charter. Hence the corporate existence of the respondent, considered with reference to its rights and powers in Minnesota, springs wholly from the legislation of this state, which by its own vigor performs the act. Therefore, while, considered as a

legal entity, with the mere right to exist, the respondent may derive its birth and life from the laws of Iowa, yet all its powers, franchises, and privileges, which are the essential and only valuable rights of the corporation, in Minnesota are as entirely and exclusively the creation of the laws of this state as if it was a domestic corporation primarily brought into being by these laws. In this sense the respondent *here* is created under the laws of Minnesota, and comes fairly within the language, as it clearly does within the spirit, of chapter 225. It has frequently been held that it is a reasonable construction of statutes purporting to regulate all corporations created or organized under the laws of a state to hold that such statute applies to foreign corporations reincorporated by the state, or permitted by statutory license to exercise their franchises within its territory. Mor. Priv. Corp. § 998. This statute ought, if possible, as we think it reasonably may, be given this construction; for it is not to be supposed that the legislature intended to exempt corporations primarily created by the laws of another state from the payment of fees exacted from corporations exclusively domestic, when the former obtain and enjoy to the fullest extent all the powers, franchises, and privileges under our laws which are possessed by the latter. No reason for any such discrimination exists, and we ought not to presume that it was intended to make any such distinction, unless conclusively forced to such a result by the language of the act. The act of 1877, and chapter 225 of the Laws of 1889, are to be construed together; and, as the latter requires the payment of these fees as a condition precedent to the filing of the articles of association, and as the former requires an Iowa corporation to comply with the laws of Minnesota as to filing its articles of incorporation, our conclusion is that it was incumbent on respondent to pay these fees before it could file its articles, and that until the articles are duly filed it has no right to exercise corporate franchises in this state. The demurrer to the information is overruled, and judgment ordered for the state, unless the respondent answer within 30 days.